Gateman v. Highland, 23765 and 23766 May it please the Court, Anna St. John, on behalf of Highland, William Gateman. In this class action, the District Court certified a class of student loan borrowers from up to 15 years ago, and approved a settlement that provides forward-looking injunctive relief, even though many members no longer have loans serviced by Navient, and that relieves the aggregate money damage claims without the opt-out and risk protection of the P3 settlement. The only money paid under this settlement went to the attorneys, the class representatives, and the new third-party organization. The class numbers got zero. Under Rule 23b-2, and this Court's decision in Vernon v. Corolla, certification is improper. The injunctive relief provided by the settlement requires Navient to change a few of its business practices, specifically with respect to how it interacts with borrowers who pass a ballot or are eligible for public interest loan forgiveness. There is a major mismatch between this form of relief and the interest of the class members. A large percentage of the class is borrowers whose loans are no longer serviced by Navient. Either their loans were transferred to another service provider, or they repaid them, or they may not qualify for public interest loan forgiveness anymore. In fact, even among the named class representatives, at least 40% of them no longer have loans serviced by Navient, and appellee payments and student loans are no longer serviced by Navient. So you can see that the class members do not benefit from the injunctive relief. The complaint itself, at the beginning of the case, recognized that this kind of injunctive relief would not be appropriate. It had separate subclasses for members who did intend to contact Navient in the future, those who still have loans serviced by Navient and might be interested in a public interest loan forgiveness program. And it's not injunctive relief only on their behalf. There was a separate subclass for anyone who had had loans serviced by Navient and had brought information about public interest loan forgiveness, and they brought money damages. But then, when it was time for settlement, the plaintiffs sought AT certification based on a claim for money damages and included even those class members who had no reason to ever contact Navient again. Can I just clarify, the class that was certified, in your view, it was based on, what was the common claim? Was it just the unjust enrichment? Was it the New York law? Can you just clarify that? Yes, Your Honor. The certification motion sought certification based on the unjust enrichment claim. And that's just the money damages claim? Yes. And so your argument is, if you certify a class based on money damages, I guess you've got to give them money damages, so you can't then give them an injunction. Right. A certification under E-2 requires injunctive relief that benefits the entire class. Here, the claim they used was a money damages claim. Because there was not an injunctive relief claim that benefited the entire class, there were only the subclass claims that sought the injunctive relief. So two of those subclasses, well, one of the subclasses, you say, didn't belong there because they're not affected, essentially, by the injunction. Yes, Your Honor. Just to be clear, it was kind of an umbrella nationwide class that included those who sought injunctive relief because they had an ongoing relationship with Navient. And everyone else who had a class certified by Navient and were interested in this public interest claim for case. And then within that umbrella class, there was a subclass just of those who didn't have the ongoing relationship and intended to contact Navient in the future. And did not intend. I didn't hear you. I'm the one wearing the mask, and I didn't hear you. Just say it. What's the third subclass that you just mentioned? So there's the umbrella class of everyone. And within that is a subclass of those borrowers who have the ongoing relationship and intend to do business with Navient in the future. And so a B2 certification may have been appropriate for that subclass. But they sought an obtaining certification of the umbrella nationwide class of everyone, including the 40% of people who no longer have a loan service with Navient. And I'm not going to have any in the future. Let's assume the loans will pay off. I'm sorry, Your Honor. I missed the question. Let's assume that some members of the class, the loans are paid off. They're not going to go for advice to anybody whether or not they have the relationship. So there's a subclass that appears not to be affected by the injunction. That's correct, Your Honor. Supposing that's so, what do we do about it? Well, the B2 certification is not proper. And that's very clear from this Court's decision in Vernon Burla and the text of the rule itself. If there is not a whole class— What do we do? We send it back down? Yes, Your Honor, in reverse settlement certification. But it can be the narrower two classes or subclasses. The 60% of people. Yeah. They would have to renegotiate a settlement to apply to a subset if that's what they plan to do. How would that happen, by the way? Would you require an amendment to the complaint? Or how would you mechanically before a district court, how would that group, assuming there is a subgroup of people who still have loans serviced by Navient, and let's say hypothetically that's the only group that fits properly within this universe of people who deserve adjunctive relief, what would be the mechanics of doing that before Judge Cote? Because all these other—I thought the point was that all the other claims have been dismissed. The only claim not dismissed is the one for unjust enrichment, which is looking for money damages. I mean, would there be another member of the class who argues that even as to the people still serviced by Navient, there's still a mismatch between the unjust enrichment claim and any adjunctive relief? Or what happens? Well, I think that's a very good question, Your Honor. I believe the only claim left is a money damages claim. I believe it's a New York State law claim. And so you would have to have a much smaller subclass that's the only one who's releasing any claims. And now you have a lot of people releasing money damages claims in the affidavit for nothing. And so you absolutely would need to negotiate something that involves a much smaller portion of the current class. And is the idea that if we were just to boot it back to the district court, all of us would just get litigated in the district court, whether a CPRA— we'd have to see how the negotiations came out and then see if there is a CPRA award or not. There's nothing else for us to review if we were to agree with that threshold question? So certification is the threshold question, Your Honor. But I do think the district court could benefit from guidance about this CPRA provision because it is so substantially troubling as far as the unfairness. And it may be a way to— It may be troubling to you and not to us. Understood, Your Honor. But I do think that because the district court didn't analyze the CPRA provision at all, and it may come up again when the settlement goes to approval, it could promote judicial efficiency to provide some guidance about the CPRA standard in that respect. I see my time is up. Thank you very much. Okay. Mr. Isaacson? If you wouldn't mind, Your Honor, may I please report for Merrick Allen Isaacson, for Appellant Richard Desmond Carson III, a class number in this case. One of the problems created by the fact that there is, you know, a complaint saying, here's a complaint for money damages. There's Article III standing after money damages in the case because these people have suffered serious injuries.  And the injunctive relief obtained, the class settlement under P2, which does not seek money damages and does not benefit many members of the class. The CPRA has made very clear that you've got to have Article III standing for each claim alleged and for each form of— When you say you've got to have, who's got to have standing? The plaintiffs have to have standing, and here only two of them are really shown now. And members of the class have to have standing because this Court has recognized and held in Denny v. Deutsche Bank, I quote, no class can be certified that contains members lacking Article III standing, end quote. So we've got a case where they have alleged money damages standing and then they've got a P2 class certified, where people have no opportunity to get locked out, that does not obtain money damages of any kind, and it has provisions that require Navient to follow certain reforms in dealing with people whose loans it's servicing. My client doesn't have loan service with Navient. My client was in your grand house severely, had his loans transferred to Federal Loans Servicing and consolidated so that he could start to qualify for the loan forgiveness that he was denied the opportunity to do because Navient was alleged. So, counsel, if your client and others similarly situated were carved out of the class, let's say this were to go back to the district court, is there a mechanism by which the group of people who still have Navient loans being serviced by Navient could somehow be formed into a class? And in your view, if that were possible, would it be objectionable if they effectively entered the same settlement? Let's say it was the same settlement, you know, the same amount going to Supre, they didn't get any money, they got injunctive relief, and I understand maybe your client wouldn't be part of that class and you wouldn't be here, but hypothetically, in your view, would that be something that would be permissible? Well, my client wouldn't have standing to object to that because my client would be excluded. If the injunctive relief for the reforms in Navient's program actually benefited members of the class whose loans had been serviced by Navient, then, yeah, that might be possible to do that. I'd also like to address very briefly the incentive awards, which I think we had a perverse incentive to settle. The main plan is about $15,000 apiece. That gave them a reason to take what was essentially an inadequate settlement for the rest of the class. I believe that incentive awards are contrary to both New York law and precedent. In all cases, not just this case. Well, yes, I think in all common fund class tensions, yes. Now, there may be cases under specific statutes. I mean, Congress could create a way to get more incentive awards in some cases, but I haven't done that here, and it ain't in Rule 23. Rule 23 authorizes motions for attorney's fees, not potions, for class representatives to receive payment for their service as a class representative, which the Supreme Court's class tension common fund decision flatly preempted. Class actions, which are those cases? Trustees versus Reno in the 1882 decision. Flatly prohibit class action. What did you say? Well. Be careful what you say. Okay. The leading Supreme Court, foundational Supreme Court cases on common fund cases are Trustees versus Reno, an 1882 decision, most often miscited as 1881, and Peps. Those two decisions say that a named plaintiff in a class action who obtains a common fund recovery for the class can have his or her attorney's fees and litigation expenses reimbursed out of the common fund. That's controlling the law. The Supreme Court continues to cite it. This Court continues to cite it. But the Supreme Court then says in both of those cases that class representatives cannot receive compensation for personal service in the matter. And I think that that prohibits a service award or incentive award in a case like this. Now, obviously, it predates Rule 23, but courts continue to apply. You know, in Peps, when it comes to common fund, it brings the award. Well, but what do we do with the fact that our court didn't in Melito? And I know it was very short, but we said, no, no, no. Those are very different facts. Aren't we now constrained by the fact that a panel of this Court has said, well, when the facts are very different, those 19th century cases don't apply? We are constrained by our reading of a Supreme Court case, right? Melito doesn't explain what the difference is. It's a telephone consumer protection action case. And what can actually matter to Melito, we really don't know. It's not explained. Also, if Melito had been conflicting with a prior Second Circuit panel opinion, your rules of precedent would say, follow the prior Second Circuit panel opinion, because Melito does not have the power to overrule it. Right, but what happens when we construe a Supreme Court case and say, oh, right, that doesn't apply here? Well, if – We do that all the time, right? We apply the Supreme Court's previous decisions. And if we took a case that predated Rule 23 and we applied it after Rule 23, maybe that was the basis, maybe it wasn't. We talked about the facts being different. But we are constrained by the fact that a panel of our Court looked at those two cases and said, no, they don't always and everywhere apply. That panel did say, which you could argue requires en banc review, or you can distinguish Melito. Thank you very much. Thank you, Your Honor. Ms. Halligan. Judge Loyer, you may please support Caleb Halligan on behalf of Ms. Hyman. It's good to be here in person. Let me start by addressing the question of whether certification was appropriate here. Judge Koch concluded that because of the individualized nature of the oral misrepresentations that were alleged here, a B-3 class could not be certified, but a B-2 class could be certified, and that was appropriate. Judge Koch found, and of course this is entitled to deference and has to be reviewed under an abuse of discretion standard, at page A654, that the class has achieved a significant benefit from the lawsuit. And specifically at page A304, the notice says, and I quote, all class members are entitled to receive the benefit of these valuable business practice enhancements. How does that benefit someone who already paid off their student loans and has no more student loans? I think that that's exactly the question here, Your Honor. It benefits them because, as this Court recognized in Denny, one of the functions of a class action can be to seek the ability to rectify the consequences of past bad advice. And here, if you have class members who have paid off their loans so that they no longer can benefit from advice through the business enhancements or through the CyPray organization about how to seek forgiveness for their loans, they nonetheless will benefit from the call center resources that are required by the settlement because whether they are trying to assess whether they have a cause of action, and Judge Cote made it clear that there are perhaps meaningful individual damages actions, and that's why she's so careful to cart them out. If you want to assess whether or not you have a cause of action, getting information about your loan repayment record and status is essential. The record keeping that is in play in this case is because the 10 years of payments that go into a potential shot at getting forgiveness is very complicated. So they benefit from that, and they also would benefit from the CyPray relief. Can you explain how that form of relief ties into the restriction in the settlement agreement that it's not to be used to either fund litigation or I can't remember what the other language is. To fund litigation, Your Honor. That's correct. In two respects. First of all, with respect to the business practice enhancements, because the call center resources have to be significantly enhanced, and this is outside the record, but anecdotally my understanding is that those are going to make a big difference in the day-to-day experience of folks who call Natalie to get information. What you are doing when you are trying to assess whether or not you have a cause of action, for example, is to figure out when did you make your loans? Would you have been eligible if you got the correct information? And that is looking at 120 months of payments, and the entity that has that information is navigating that to the surface in your loan. With respect to the CyPray relief specifically, which I think might be more what Your Honor is getting at, even though the settlement provides that public service promise cannot itself litigate claims on behalf of borrowers, it can certainly advise them about their options to pursue relief and refer them to individuals or organizations that might be able to assist them in exploring that. So you are saying the litigation carve-out is actually a very narrow and targeted carve-out, but that these injunctive remedies, but also the CyPray money can sort of help those who have already paid off their loans to sort of lay the groundwork for on their own in the future pursuing litigation? Absolutely. There is another way in which the relief will benefit class members regardless of whether they have paid off their loans. If you look at the declarations from the named plaintiffs, and I urge the Court to do that because I think it really illustrates how important the stakes of this settlement are. One of the things that a number of the named plaintiffs explain is the consequences that their inability to get forgiveness has had for getting a mortgage for all of the day-to-day financial circumstances that we all have to deal with. And so not only would it be important for a class member whose loans have been paid off to get information to assess whether they have a cause of action, but it also could be essential in an effort to explain to a bank why you should be able to get a mortgage at a reasonable rate. Those payment records are wind-nabbing, and that is why that is so critical. That is the overarching benefit to all of the class members. That is the overarching benefit to all of the class members. That is the overarching benefit to all of the class members and for many of the class members. And here I would say those whose loans are being serviced by NAMI as well as those whose loans have been transitioned to another servicer. Both of those groups, and we don't have numbers because we don't know what the current status is on the ground, but I would estimate that that would comprise a very significant amount of the class. Both of those groups will benefit because the call center representatives as well as the site credit organization, once it gets up off the ground, are required to inform themselves about the eligibility requirements for loan forgiveness. Those have actually changed in the past year, and now the loan forgiveness is a little bit easier to get because the type of qualifying loan repayment programs has been broadened. And so getting accurate information about the way in which you are repaying your loans is even more essential today than it was at the time this settlement was entered into. I would also just say, you know, this question about whether or not there are class members whose loans have been paid off, the way in which that has surfaced is that one of the named plaintiffs who went on a podcast to discuss her experiences with this case and with NAMIENT was given funds through a GoFundMe because of her comments on that podcast. And that is when they were able to pay her loans off. So, you know, that is what my adversary is relying on. This Court has said in a number of cases, and I'm pointing to Comer v. Cisneros in particular, that where you have a class definition in which the status of individual class members may change because especially where there is some programmatic relief that you are seeking because that may be what Comer calls transitory, that that does not affect whether it is appropriate to certify a class. And that is exactly what is at issue here. So I would say that even if the relief provided in terms of the business practice enhancements and the side credit relief did not aid every class member, and it certainly does, that it would still be something that would not include certification under V-2. Would you address the specific arguments that were made about standing and who is required to show or demonstrate standing in this context? Yes, Your Honor. With respect to standing, I would first of all point the Court, if I could, to its decision in Denny, which confirms that future risk, including a risk that you would sustain costs or time in rectifying the consequences of bad advice, is sufficient for standing. And that that is gauged at the time the complaint is filed. I don't think there is any question that there is standing at the time of settlement and also at the time at which the complaint was filed. But can you parse out standing as to which forms of relief? Because I guess what's confused me is that that clearly, if you're right, that that is an injury, right? There's risk of future harm and it's not speculative. That's enough to get injunctive relief. But the claim on which class certification was granted was only as to the unjust enrichment, right? Just as to the money damages, right? Just as to the pecuniary loss in the past. Isn't that right? And so how do you line those things up? I don't think there's anything in this Court's precedence which suggests that you would parse standing in that way. What about the Barilla case, though, right? We said the past purchasers, if you bypassed in the past. This case could not be more different from Bernie. Here's why. What happened in Bernie, and Bernie actually did not question standing, Bernie looked at the question of whether certification was appropriate. So even in Bernie, where you're talking about whether the cost of ox is filled up, you know, enough, this Court assumed that there was standing. And because of the Court, the Court would have had to consider standing to respond to everybody who didn't have it. And we assumed and concluded that it did. Well, if it occurred to us, I mean, you know. It may not have since I was on the panel. I didn't even remember that. But let me continue then. This case is completely different. Bernie is a case in which this Court said that where you are a past purchaser of a consumer, if I may continue. Where you are a past purchaser of a consumer product, like a plastic box, and you claim that you were deceived. You will know going forward about that deception, and so you can't sustain any injury. That is not at all what we have here. The complaint lays out and the declarations lay out in real detail the future ongoing consequences, not only in terms of. . . Well, but not necessarily for anybody who's paid off their loan. Unless it's hypothetical that they're going to go and do what? Take out another student loan from Navien? Well, that may be one thing that would happen, but again, Your Honor, what's not hypothetical is, as Judge Coates said, they may well have meaningful causes of action against Navien that they have to bring on an individual basis. The only reason that she didn't certify a B-3 class was because she said that it couldn't be done on an aggregate basis because of the individualized nature of. . . But that doesn't really help, right, to say that because you're ineligible for one class certification, I've got to give you the other. You have to independently qualify for the kind of certification you want. So, I mean, that's sort of interesting and it's been mentioned a lot, but it seems wholly irrelevant. I mean, I don't know, I could probably list 72 reasons, other theories that cannot be invoked for a class certification in any given case, but that doesn't mean the remaining one is valid. I mean, we have to talk about the validity on its own. So that's my question here is, why is this one valid? And again, just going back to the idea of if they're looking for money damages and that's the basis for the class, how is it that you give them injunctive relief? And maybe what I'm hearing from you, and tell me if this is not right, is, well, even as to those who paid off their loans, they might have a claim they could pursue on an individual basis. The injunctive relief and the CPRA money could help them down the road, I don't know, in some form of self-help. They can go off and sue and there's some way in which this injunctive relief can give them a leg up to get their money damages. But is that the only theory under which you get a link between the people who paid off their loans and getting money damages? Is money in their pocket at the end of the day? Well, again, Your Honor, I think that's probably a vanishingly small percentage of the class, and so I don't think that that goes to whether there is standing. I do think that that is the primary way in which individuals whose loans have been paid off benefit. And they also, I think, would benefit because the kind of documentation that NABNY has and that its call center representatives can and must provide can be essential for all kinds of financial transactions as the declarations themselves lay out. I think that the question, Your Honor, is the same. What exactly is this? I'm sorry. What is the documentation that's going to help? So, Your Honor, for example, a number of the Navy plaintiffs explain that in attempting to get mortgages, that their outstanding loans have made it much harder for them to secure a mortgage on a reasonable basis or to get one at all. And so my point is that with respect to those folks, being able to show documentation of on-time payments on a regular basis may well be very helpful. In addition to that, there is the other one. It has a potential monetary impact. Yes. That's your point. And that's the tie. Yes. And also the ability to assess whether they have a cause of action. And, Judge Murphy, I did not mean to suggest that because there was no beat free, there should be a beat too. My point was different. It's that Judge Coates said there's no beat free not because there are no viable money damages claims. It's because you can't bring it on an aggregate basis. And so her recognition that those claims may be very valuable is what makes the information that you can get from the call centers all the more essential to every class member, whether they have repaid or they have not repaid. I know my time is up, but if I could make two other points very briefly, Your Honor. Sure. First of all, with respect to whether or not site credit relief is appropriate in a beat too class action. I mean, we would certainly welcome this court's guidance on that point. But I think that this court has signed off on site credit relief in a number of cases. And in Amara, this court has held that incidental monetary relief is absolutely acceptable post-Walmart in a beat too class action. And finally, with respect to the incentive awards, as you indicated, Judge Nardini, Melita squarely addresses this. It squarely refutes the 1800s cases on which. It doesn't refute. It just doesn't refute. It's like the tiniest little square you ever found. It does, but I would say that the court squarely so held. It also is the correct decision. And as you suggested, Your Honor, the only way to revisit that would be via Indian Bank. But we don't really know what the basis of Melita was. It could have said it doesn't apply based on the facts of this case. We don't even know what facts or anything. It was, I mean, I don't know. It was so in passing that I'm not sure we know how to apply. What is the breadth or narrowness of that ruling? Well, I agree that it is brief, but I think it is. You're telling us that Melita helps you, right? Well, I think it actually closes the legal argument that the cases of Pettis and Greenaw, on which my understudy relies, matter. But here, Judge Nardini, to your question about what the facts are regarding the incentive awards, I think that if you look at the declarations and if you look at the amount of time that these individuals invested, far more than in the mind-running class actions, they came physically, while you still could come, to the preliminary approval hearing. They attended remotely the fairness hearing. They were deeply involved. Judge Coates details the extent to which, and this is at pages 651 and 652 of the appendix, the extent to which, as she said, they laid bare their financial circumstances, their career choices, their personal histories, and they even suffered personal attacks. So to the extent there's any question about whether it was warranted here, I think that the record squarely explains why it is and why Judge Coates' decision is far from a reason for discretion. If there are any other questions, I would be happy to answer them. Thank you very much. Thank you, Your Honor. Ms. Singh-Chan. Thank you. I'd like to address this idea that the injunctive relief somehow helps class members to bring litigation over damages claims. The record doesn't support this idea that NAMI is going to provide information that will allow class members to somehow pursue money damages. The injunctive relief relates to the search providers' communication about eligibility for public interest loan forgiveness. To the extent class members need to get their records of payment, there are other ways they can do that. That's not through the injunctive relief. B-2 is clear. But isn't this intended to facilitate their access to records? So it doesn't. The class members can always get records in another way.  I suppose it could. I want to see exactly what NAMI is doing in that respect. But I don't think that it's an incremental benefit provided by the settlement. And so if we're looking at whether the injunction actually benefits the entire class, the record doesn't support that. How would we assess an incremental benefit? I mean, if I have some process that facilitates my access to my records so that I can assess whether I have a claim or whether I have a loss, why isn't that just a benefit? I don't understand the word incremental benefit. Well, I suppose I should say it's not a benefit. It's not changing the status quo. I don't know if there's a record of class members not being able to get their payment records before. And so the record does not support the idea that being able to get your payment history somehow justifies releasing aggregate money damages claims, which is what the settlement does. And even if the district court found that a class action may be difficult, that doesn't justify— Don't these declarations—so I can't point you to one, but Ms. Halligan cited to these declarations that apparently discuss how the ability to access these records is helpful. I don't believe that's supported by the district court's analysis of whose good would the injunction believe, Your Honor. Okay. But do you deny that such declarations are in the record? I'm sorry, Your Honor. I have to go back and look at them. This has not been an issue until today, so I cannot— Fair enough. I will say, however, that the district court, even though it found that class action may be difficult, we have a class action here where millions of dollars were obtained as relief. If a class action is not going to result in any—have any benefit for class members, that's the lie by the record here. The class members themselves do say in their declaration that bringing an individual damages claim would be infeasible because of the size of their damages. And so the idea that a couple of class members or, let's say, six class members can't join together into an aggregate action and obtain relief is not valuable. It's just not supported by the record. And the class members are being required to give that up as part of the sum in exchange for no benefit. The side claim relief, for example, provides no incremental benefit. It helps everyone. Here I'm using the word incremental benefit purposely. It gives the relief to everyone in and out of the class. The class members are releasing something, but they're not giving it up. I mean, what you're really saying is it provides no benefit that's unique to the class. That's exactly right, Brian. Could I just ask, and this is really bagging out to a macro level, what are your clients hoping for? What's the end result here? I mean, it sounds like Judge Coate was prepared to throw out this remaining claim. It was very dubious. Assuming you could settle for the same amount, $2.5 million, and I think it was something like 300,000 class members. I don't know. Assuming you just wrote every class member a check and assuming you could find them. Assuming you didn't have to pay postage. What is that? Everybody gets $8. I mean, is that? Concretely, what's the hope here? What's the end game? I guess I'm just curious. Sure. You're under $50. That $8 is better than nothing, right? So if there were a class claims process where class members could submit a claim with a multimillion dollar settlement fund and obtain something in exchange, that's something. So $7, as I understand the number is, is what you are looking for. Well, if there was a claims process and you had 10% of class members make a claim, the record, the claim is acknowledged to be a $70 benefit. Okay. And you're saying, and I get it, $7 or $70 is better than zero. Exactly. It's better than a call center that you're never going to use. Exactly. Yeah. Thank you. Mr. Isaacson. Yeah, please. The declarations that were filed by the plaintiffs talk about how because they were misled by Navion, they have massive debt if you can get mortgages. The settlement, as opposing counsel described it, requires call center reps to inform colleagues about eligibility and loan forgiveness. But those are two different things. I don't believe the declarations of the class representatives talk about the importance of access to benefits or that Navion has denied them access to records or, indeed, that the settlement involves Navion's practices with respect to describing records or giving access to records. It's dealing with eligibility for loan forgiveness, which means that the declarations don't really support that. Now, the declarations also support the notion that some of them were attacked, but that was not because they filed a case so much as because they appeared on television and newspaper accounts. I was part of a publicity campaign of the American Federation of Teachers and on podcasts and such. With respect to what we want, right now we've got a ruling that says all the claims of one is bad. You certify a class, that ruling is binding on all class members. You don't certify a class, people are not bound by the adverse rulings in this case. Class certification hurts the class. Moreover, we've got 50 states with 50 sets of laws. The fact that the district court can think a class could be certified in this case or that the district court caught some specific claims in specific states could not succeed on the merits without this court reviewing those rulings, you know, leaves open the possibility, if the class is not bound... Is there an attorney's fees issue here as well? Well, they applied for about half a million dollars in attorney's fees in a class note, and the class note is called class, but they were looking for half a million dollars in attorney's fees. In fact, it was half a million dollars to be paid to the American Federation of Teachers, which had been paying the attorney's fees all along, some $6 million or so. So it was reimbursed? Well, no. The judge said, you misled me. You misled the court. The class not noticed that it was misleading, and I'm not going to allow that to go to the American Federation of Teachers. It's going to go to the Cy Craig Organization. Well, that indicates there was a misleading class notice. The class was misled, and it's important because it's important to know who is paying the lawyers. You know, who pays the pipe or calls the tune? And somebody other than the client is paying the attorney's fees. You need to have protections for the class. You need to have a class consent, and the class has no opportunity to consent to that. And if you'll forgive me, along the lines of what I asked your colleague, sort of in general, am I understanding that your endgame here, again, macro level, would be as if you undo all this, maybe you can represent your client or somebody else can represent your client in some other forum and do better? Yes. Seventy dollars. Is that a number that you agree with? Seventy dollars? No. Okay. I mean, it's one of those good people. When people are under crushing debts and hundreds of thousands of dollars, a trivial recovery is quite frankly not enough. And the reason NAMIA insisted on having a provision in the settlement that prevents people from cancelling any claims, no more than five claims in any case, was because they know that individuals don't hand out the money, and the resources don't do that. So you would go for vastly more than whatever it was, two and a quarter million? Yes. You read the declarations of NAMIA claimants, one after another says, I wanted to file my action, but I couldn't afford to hire a lawyer to do it. The only reason I could bring this case was as a class action. And what does the settlement agreement do? It makes it impossible for members of the class to bring a class for aggregate action. And this would undo, I mean, if we agreed with you entirely, the organization that is funded by the Cypher Award. I mean, at this point, yes. If you reverse on this record, and I think you really ought to reverse on this record. I know that. This settlement would be vacated and void, and they'd have to start again. Thank you very much. We'll reserve the decision. That concludes today's argument calendar. Court is adjourned.